IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RUBY MORALES                                                                                   PLAINTIFF

V.                                             NO. 12-5211

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration            DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Ruby Morales, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

Plaintiff filed her applications for DIB and SSI on November 6, 2006, alleging disability since January 15, 2006, due to "Bipolar." (Tr. 180-182, 214, 218). An administrative hearing was held on October 8, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 67-86).

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

-1-

On November 4, 2008, the ALJ issued an unfavorable decision. (Tr. 91-99). On May 14, 2010, the Appeals Council vacated the hearing decision and remanded the matter to the ALJ, for resolution of the following issues:

> • Further consideration of claimant's impairments is warranted and if it is found that claimant does not have past relevant work, consider the claimant's impairments in accordance with step 5 of the sequential evaluation process.
>
> • Upon remand, the ALJ will give further consideration to claimant's past relevant work and consider, if necessary, the claimant's impairments at step 5 of the sequential evaluation process.
>
> • Give further consideration to Claimant's maximum RFC and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.
>
> • If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on claimant's occupational base....and identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).
>
> The claimant filed subsequent claims for Title II and Title XVI benefits on July 7, 2009. The Appeals Council's action with respect to the current claims renders the subsequent claims duplicate. Therefore, the Administrative Law Judge will associate the claim files and issue a new decision on the associated claims.

(Tr. 106). Another hearing was held in this matter on November 10, 2010, at which time Plaintiff testified, as well as Nancy Ewing, MED, LCSW, from Ozark Guidance, Inc. (Tr. 35-66). By written decision dated February 16, 2011, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - mood disorder and anxiety

(Rev. 8/82)

disorder. (Tr. 20). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 21).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine, and repetitive tasks where the complexity of tasks is learned and performed by rote. The claimant can respond appropriately to supervision that is simple, direct, and concrete, to coworkers, and to usual work situations. The claimant can have no contact with the general public. The claimant can perform low stress work (defined as occasional decision making and occasional changes in workplace settings).

(Tr. 23).  With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as packing machine operator, sewing machine operator, and industrial cleaner. (Tr. 27).  Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on September 7, 2012. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 7,8).

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. <u>Ramirez v. Barnhart</u>, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it. <u>Edwards v. Barnhart</u>, 314 F.

3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national

AO72A
(Rev. 8/82)

economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.   Discussion:

The Court is troubled by the fact by the fact that the ALJ gave such little consideration to the treating physicians' opinions. Throughout the history of this case, Plaintiff has suffered from symptoms of Bipolar Disorder, experiencing up and down mood swings. After being treated by Dr. Mark Baltz, Diane H. Lyddon, APN., and Nancy G. Ewing, MED. LSCW, of Ozark Guidance, Inc., on March 20, 2008, these three individuals wrote a letter "To Whom It May Concern," discussing Plaintiff's mental history and concluding as follows:

> In our opinion the functional limitations of Ruby's mental illness are incompatible with the ability to work. Failure to adapt to stressful circumstances of a work setting would certainly cause her condition to deteriorate and exacerbate all of her symptoms.

(Tr. 405). They also reported that Plaintiff's symptoms were in part controlled by the medication, although she has had multiple changes in her medication, and that her low level of functioning was due to her severe and persistent mental illness symptoms. (Tr. 405). The next day, on March 21, 2008, Ms .Ewing completed a Medical Source Statement, wherein she found that Plaintiff had: poor/none ability to relate to co-workers, deal with the public, and interact with supervisor; good ability to follow work rules and use judgment; poor/none ability to deal with work stresses and maintain attention concentration; good ability to function independently; poor/none ability to understand, remember and carry our complex job instructions, understand,

remember and carry out detailed, but not complex, job instructions; poor/none ability to understand, remember and carry out simple job instructions; poor/none ability to relate predictably in social situations and demonstrate reliability; fair ability to maintain personal appearance and behave in an emotionally stable manner, and the ability to manage benefits in her own best interest. (Tr. 407).

Subsequent to the entry of the ALJ's first unfavorable decision (November 4, 2008), on November 11, 2008, Dr. Ardell William Diessner, of Ozark Guidance, Inc., wrote a letter to the ALJ, stating that he may have misinterpreted Dr. Diessner's comment about Plaintiff's drug usage in a previous document. Dr. Diessner stated as follows:

> Ms. Morales' mental illness is a relapsing problem and frequently gives her significant impairment in her ability to function, especially in a work situation that would require her to function at a high level for a long period of time. Her mental illness affects both her social and work life.
> I hope this clarification helps you to see that Ruby was not untruthful about her drug use as you noted on Page 4, fourth paragraph, of your decision. It would also be helpful for you to know that our notes are not written with the thought about a person's ability to work since our only focus is our clients' mental health. I do think that Ms. Morales is unable to be competitively employed at this time.

(Tr. 568).

Subsequent to the May 14, 2010 Appeals Council remand, Dr. Maria C. Melo and Ms. Ewing, of Ozark Guidance, Inc., diagnosed Plaintiff on June 6, 2010, as follows:

      Axis I:      Bipolar Disorder NOS
      Axis II:     No diagnosis
      Axis III:    None known
                      Reported migraines and problems with hearing
      Axis IV:    Problems with primary support group
                     Problems related to social environment
                     Economic problems

    Axis V:  Current GAF - 42

(Tr. 685).

  On November 18, 2010, a Medical Assessment of Ability to do Work-Related Activities was completed by Dr. Melo, wherein she stated in her opinion, the functional limitations of Plaintiff's mental illness were incompatible with the ability to work, and that failure to adapt to stressful circumstances of a work setting would cause her condition to worsen. (Tr. 695).

  It is clear that in this case, Plaintiff's treating physicians have, on more than one occasion, indicated that because of Plaintiff's severe mental illness, she would not be capable of performing in a competitive work environment. On the other hand, the April 20, 2007 and April 24, 2009 Psychiatric Review Technique reports, as well as April 20, 2007 and April 24, 2009 Mental RFC Assessments, indicate that Plaintiff is capable of performing unskilled work. However, it is noteworthy that these reports are from non-examining consultants.

  In his decision, the ALJ addressed Ms. Ewing's hearing testimony and opinion by stating that "a finding of 'disability' is a decision reserved for the Commissioner." (Tr. 26).   The ALJ addressed the letter submitted by Dr. Baltz, Ms. Ewing, and Ms. Lyddon, by stating that "these opinions are more limiting that the objective medical evidence of record would support." (Tr. 26). The ALJ addressed the letter of Dr. Diessner by stating that "a finding of 'disability' is a decision reserved for the Commissioner." (Tr. 26). And finally, the ALJ addressed Dr. Melo's November 18, 2010 medical assessment by stating that "her opinion is more limiting than the objective medical evidence of record would support." (Tr. 26).

  "A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with

-7-

other substantial evidence in the record." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir.2003), *paraphrasing* 20 C.F.R. § 404.1527(d)(2). Additionally, the ALJ "must attempt to reconcile the medical reports of the treating physician with those of the consulting physician, or he must direct interrogatories to each physician to obtain a more substantiated opinion of the claimant's capabilities." Smith v. Schweiker, 728 F.2d 1158, 1164 (8th Cir. 1984).

Given the fact that Plaintiff was treated over a period of four years at Ozark Guidance, Inc., by Dr. Baltz, Dr. Diessner, Ms. Lyddon, Ms. Ewing, and Dr. Melo, and given the fact that all of these individuals believed Plaintiff's mental impairments would prevent her from functioning in the workplace, the Court believes there is not substantial evidence to support the ALJ's reliance on the non-examining consultants who found that Plaintiff was capable of unskilled work. Therefore, the Court believes this matter should be remanded in order for the ALJ to further obtain, by written interrogatories to the doctors involved, additional information as to why they believe Plaintiff would not be able to perform substantial gainful activity. Alternatively, the ALJ should obtain a Mental RFC Assessment from an examining mental health expert. Once the additional information is received, the ALJ should then reconsider and re-evaluate Plaintiff's Mental RFC.

### IV.   Conclusion:

Accordingly, the Court recommends that this matter be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that**

**objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 30th day of October, 2013.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE